Opinion issued May 23, 2019



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-01084-CV

———————————

## IN THE INTEREST OF J.T.W.P., A CHILD

---

**On Appeal from the 314th District Court**
**Harris County, Texas**
**Trial Court Case No. 2018-02100J**

---

## MEMORANDUM OPINION

This is an appeal from the trial court's order terminating a mother's parental rights to her son. The trial court found that termination was warranted under Texas Family Code section 161.001(b)(1)(M) and was in the child's best interest under section 161.001(b)(2). The mother challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that termination was in the child's best

interest. We conclude that legally and factually sufficient evidence supports the finding and therefore affirm.

## BACKGROUND

The mother has a history of chronic drug abuse that first came to the Department's attention in 2013, when it found reason to believe a referral of neglectful supervision of her infant son, observing that the "[m]other is a chronic drug user which place[s] the children at risk along with domestic violence."

In the Department's investigation of a second referral in 2015, the mother admitted to using drugs and tested positive for cocaine, marijuana, benzodiazepine, amphetamine, and methamphetamine. The Department found that the mother's neglectful supervision posed an immediate danger to the child. It took the boy into custody and instituted proceedings that resulted in the termination of the mother's parental rights. The 2016 termination decree recites findings that the mother engaged in conduct which endangered the child and that she constructively abandoned him when he came into the Department's care.

The mother also has significant criminal history. In 2004, the mother pleaded guilty to the offense of endangering a child, for which she served a six-month jail sentence. She served a 180-day jail sentence in 2012 after being convicted for forgery. She also has a 2013 conviction for marijuana possession and a 2017 conviction for theft.

2

The mother gave birth to Jacob in February 2018.[1] His birth came to the Department's attention after a routine review of birth records identified him as the child of a parent who had previously lost her parental rights to another child.

A Department investigator found the mother at her residence and spoke with her outside. The mother denied having previously lost parental rights to a child, denied any prior involvement with the Department, and denied drug use. She agreed to submit to a drug test, which yielded a positive result for methamphetamine. The mother, however, denied using methamphetamine and claimed that she did not know why the test gave that result because she had used drugs only once since Jacob's birth and had used ecstasy, not methamphetamine.

When the investigator asked about Jacob's whereabouts, the mother initially responded that he was with her aunt, a response that was disproven when the mother's girlfriend emerged from the residence holding the child. The girlfriend volunteered that something was wrong with the mother and she needed mental health services. The investigator asked the mother about her mental health. The mother responded that she suffered from depression and anxiety, but her girlfriend indicated that the mother's condition was more serious.

After further discussion, the mother agreed to have the investigator place Jacob in the care of a residential program for children in Houston. A few weeks later,

---

[1]     "Jacob" is a pseudonym. *See* TEX. R. APP. P. 9.8(b)(2).

the Department brought suit for temporary managing conservatorship of Jacob and termination of the mother's parental rights. The mother submitted to additional drug testing after the first hearing. The urine specimen she provided tested negative, but her hair specimen tested positive for cocaine and codeine.

The mother did not appear for the next status hearing. At that hearing, the Department asked the trial court to find aggravated circumstances based on the mother's 2004 conviction for endangering a child and the termination of her parental rights to Jacob's older brother. *See* TEX. FAM. CODE § 262.2015(b)(3)(I), (b)(5). Based on the aggravated-circumstances finding, the trial waived the requirement to provide the parent with a service plan and the requirement to make reasonable efforts to return the child to the parent. *See id.* § 262.2015(a). The trial court approved supervised visitation between Jacob and the mother once every two weeks. The Department offered drug testing to the mother, but the mother did not appear for it.

In June 2018, the Department placed Jacob with the same foster parents who had adopted his biological brother. The foster mother testified that Jacob is a cheerful, happy, and mostly healthy baby. He receives speech therapy and physical therapy, and he is on the wait list to receive occupational therapy.

The caseworker confirmed that the mother participated in supervised visits with Jacob according to the schedule. She observed, however, that Jacob does not appear to have a bond with the mother; he cried continuously during the visits and

4

the mother was unable to console him. The caseworker explained that if Jacob cried while she was caring for him, she could calm him down, and observed that he did not cry when he was with the foster family as he did during the mother's visits. Jacob has bonded with his brother and the foster parents, who would like to adopt him. The caseworker told the court that the home was an optimal permanent placement for Jacob; it was safe, loving, and stable.

The trial court held a bench trial in October 2018. The mother did not appear for trial. After hearing testimony from the Department's caseworker and the foster mother, the trial court found the mother's parental rights as to another child had been involuntarily terminated based on an endangerment finding and that termination of her rights was in Jacob's best interest. TEX. FAM. CODE § 161.001(b)(1)(M), 161.001(b)(2). Based on those findings, the trial court entered judgment terminating the mother's parental rights.

## DISCUSSION

The mother concedes that the evidence is sufficient to support the predicate finding for terminating her parental rights under § 161.001(b)(1)(M). She argues that the evidence is legally and factually insufficient to support the finding that termination of her parental rights is in Jacob's best interest.

5

## A.    Standards of Review and Applicable Law

Parents' rights to the "companionship, care, custody, and management" of their child is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982); *accord In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). We therefore strictly scrutinize termination proceedings and strictly construe the involuntary termination statutes in favor of the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Parental rights, however, are not absolute and "[t]he rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003). Recognizing that parents may forfeit their parental rights by their acts or omissions, the primary focus of a termination suit is protection of the child's best interest. *Id.*

In a case to terminate parental rights under section 161.001 of the Family Code, the Department must establish, by clear and convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying termination and, (2) termination is in the best interest of the child. TEX. FAM. CODE § 161.001(b). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007; *see In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002). "'Only one predicate finding' under section 161.001(b)(1) 'is necessary to support a judgment of termination when there is also

a finding that termination is in the child's best interest.'" *In re A.M.*, 495 S.W.3d 573, 579 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (quoting *A.V.*, 113 S.W.3d at 362).

In a legal-sufficiency review in a parental-rights termination case, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that its finding was true. *J.F.C.*, 96 S.W.3d at 266. We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, disregarding all evidence that a reasonable factfinder could have disbelieved or found incredible. *Id.*

In a factual-sufficiency review in a parental-rights termination case, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). By focusing on whether a reasonable factfinder could form a firm conviction or belief, the appellate court maintains the required deference for the factfinder's role. *Id.* at 26. "An appellate court's review must not be so rigorous that the only factfindings that could withstand review are those established beyond a reasonable doubt." *Id.* We should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *J.F.C.*, 96 S.W.3d at 266. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the

7

finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

The scope of our evidentiary-sufficiency review includes all the evidence admitted at trial, as well as any other documents that the trial court properly could have considered through judicial notice. *In re B.D.A.*, 546 S.W.3d 346, 363–64 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (en banc). We presume that the trial court took judicial notice of its own records in a case even in the absence of a request, because "[a] trial judge judicially knows what has previously taken place in the case on trial." *Asplundh Tree Expert Co. v. Abshire*, 517 S.W.3d 320, 344 n.13 (Tex. App.—Austin 2017, no pet), *quoted in In re B.D.A.*, 546 S.W.3d at 364.

## B. Best Interest of the Child

The mother contends that the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights was in Jacob's best interest. Appellate courts examine the entire record to decide what is in the child's best interest. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013).

A best-interest analysis centers on the child's well-being, safety, and development. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). A strong presumption exists that a child's best interest is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). In considering whether

8

termination is in a child's best interest, courts consider the following nonexclusive factors identified by the Texas Supreme Court in *Holley v. Adams*:

> (a) the desires of the child,
>
> (b) the emotional and physical needs of the child now and in the future,
>
> (c) the emotional and physical danger to the child now and in the future,
>
> (d) the parental abilities of the individuals seeking custody,
>
> (e) the programs available to assist these individuals to promote the best interest of the child,
>
> (f) the plans for the child by these individuals or by the agency seeking custody,
>
> (g) the stability of the home or proposed placement,
>
> (h) the parent's acts or omissions that may indicate the existing parent-child relationship is not a proper one, and
>
> (i) any excuse for the parent's acts or omissions.

544 S.W.2d 367, 372 (Tex. 1976). Evidence establishing one of the predicate acts under section 161.001(b)(1) may be relevant to determining the child's best interest, including endangerment of the child. *A.M.*, 495 S.W.3d at 581. The Department need not prove all of the best-interest factors as a condition precedent to parental termination, "particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *C.H.*, 89 S.W.3d at 27.

## C.    Analysis

The mother complains that the evidence adduced by the Department is thin and conclusory, only referencing the mother's history without specific evidence of the mother's endangering history. The record shows that during trial, the court noted

9

the want of evidence specifically addressing this issue, which led the Department to recall its witnesses and present additional evidence.[2] We agree that, given the constitutional interests at stake, the strength of the presumption that maintaining the parent-child relationship is in the child's best interest, and the finality of severing that relationship, the Department should have taken more care to develop the evidence that termination of the mother's parental rights is in Jacob's best interest.

That said, after reviewing the entire record, we conclude that it contains legally and factually sufficient evidence to support the trial court's finding that termination of the mother's parental rights is in Jacob's best interest. The mother's older child was removed from her care because she admitted using drugs; tested positive for cocaine, cannabinoids, amphetamine, benzodiazepine, and methamphetamine; lacked stable housing; and had a prior history of abuse and neglect. During her testimony, the foster mother, who reviewed the Department's records of that proceeding in connection with the adoption, agreed that the mother has a substantial history of drug abuse that "goes back years." The evidence before

---

[2] To the extent the Department seeks to rely on the predicate finding for termination under section 161.001(a)(M) to provide support for a best-interest finding, appellate review would be greatly aided by including pertinent excerpts from the prior termination case in the record of this case. We note that the trial court in this case also presided over the prior termination case, but the Department did not ask it to take judicial notice of the record in that case or seek to include any part of the record for our review.

the trial court also included the mother's criminal record, including her 2004 conviction for endangering a child.

The mother did not appear for trial and, because of the aggravated-circumstances finding, she did not participate in any of the Department's services. When the Department took Jacob into custody, the mother told the investigator that she intended to participate in a drug rehabilitation program, but no evidence at trial showed that she had, and she did not act on the Department's offer to provide drug testing during that period. The record wholly lacks evidence showing any significant change in the mother's circumstances since Jacob was placed in the Department's care.

Based on the mother's long history of substance abuse, the prior endangerment findings—both criminal and civil—and without evidence of any significant change in her behavior, the trial court could reasonably infer that the mother was likely to continue using drugs in the future. *See In re J.S.-A*, No. 01-17-00491-CV, 2018 WL 891236, at *8 (Tex. App—Houston [1st Dist.] Feb. 15, 2018, pet. denied) (mem. op.); *see also In re J.H.G.*, No. 01-16-01006-CV, 2017 WL 2378141, at *8 (Tex. App.—Houston [1st Dist.] June 1, 2017, pet. denied) (mem. op.) (explaining that in making best-interest determination, factfinder may consider evidence of a parent's past behavior that endangered child's well-being and infer that the conduct may recur in the future if child is returned to parent). Her failure to

11

appear for drug testing or demonstrate any attempt at rehabilitation also support that inference.

A parent's drug use suggests instability in the home because it exposes the children to the possibility that the parent may be impaired or imprisoned. *See In re A.M.*, 495 S.W.3d 573, 579 (Tex. App.—Houston [1st Dist.] 2016, pet. denied); *P.W. v. Dep't of Family & Protective Servs.*, 403 S.W.3d 471, 479 (Tex. App.—Houston [1st Dist.] 2013, pet. dism'd w.o.j.). "Without stability," a parent cannot "provide for the child's emotional and physical needs." *In re C.A.J.*, 122 S.W.3d 888, 894 (Tex. App.–Fort Worth 2003, no pet.).

The trial court also could consider evidence of Jacob's behavior with the mother in contrast to his behavior with the foster family. We note that the mother fully participated in supervised visitation with Jacob. The caseworker testified, however, that Jacob showed significant distress throughout those visits, and the mother apparently lacked the ability to soothe him. The caseworker testified that Jacob did not cry with her or the foster mother like he did in the mother's presence.

Although Jacob was too young to testify at trial, the evidence shows that Jacob is doing well in the foster parents' residence. He has bonded with the foster parents and his biological sibling, whom the foster parents have already adopted. The foster parents, who wish to adopt Jacob, provide a safe and stable home, and they make sure that Jacob receives the services he needs to stay developmentally on track.

Considering the evidence in a light favorable to the trial court's judgment, we conclude that a reasonable factfinder could have formed a firm belief or conviction that termination of the mother's parental rights was in Jacob's best interest. We further conclude that, in light of the entire record, factually sufficient evidence supports the court's firm conviction and belief that termination of the mother's parental rights was in Jacob's best interest.

## CONCLUSION

We affirm the judgment of the trial court.

Gordon Goodman
Justice

Panel consists of Justices Keyes, Goodman, and Kelly.