

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-19-00037-CV

**IN THE INTEREST OF A. N., ET AL., CHILDREN**

From the 38th Judicial District Court, Medina County, Texas
Trial Court No. 18-01-24656-CV
Honorable Cathy O. Morris, Judge Presiding[1]

Opinion by: Irene Rios, Justice

Sitting: Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice
Irene Rios, Justice

Delivered and Filed: July 24, 2019

AFFIRMED

Following a bench trial, Father's parental rights were terminated as to his three children,

Jessie, Jason, and Joey.[2] The trial court then appointed the children's maternal great-grandmother

as managing conservator and Mother as possessory conservator. The only issue presented by

Father on appeal is whether the evidence is legally and factually sufficient to support the trial

---

[1] The Honorable Cathy O. Morris, Associate Judge, presided over the trial on the merits, and the Honorable Camile G. DuBose presided over the de novo hearing.

[2] To protect the identity of a minor child in an appeal from an order terminating parental rights, we refer to the parents as "Mother" and "Father" and to the children using aliases. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2). The trial court's order implicated the parental rights of Mother, A.N.'s father, and appellant Father. Only appellant Father appeals the trial court's order. Here, all three children who are the subject of this appeal have the initials J.J.O. We refer to the children as "Jessie," "Jason," and "Joey." A.N. is not the child of appellant Father, and is, therefore, not a subject of this appeal.

court's finding that termination was in the children's best interest. We affirm the trial court's order.

## BACKGROUND

On January 22, 2018, the Texas Department of Family and Protective Services ("Department") filed a petition to terminate parental rights. A bench trial was held before an associate judge on November 20, 2018, following which the associate judge signed an order terminating Father's parental rights to Jessie, Jason, and Joey. Thereafter, Father requested a de novo hearing, which was held on January 15, 2019. At the de novo hearing, the trial court took judicial notice of the reporter's record and exhibits from the initial hearing.[3] The trial court also heard additional testimony. On March 6, 2019, the trial court signed a Final De Novo Order of Termination of Parental Rights terminating Father's parental rights to Jessie, Jason, and Joey.

## STANDARD OF REVIEW AND STATUTORY REQUIREMENTS

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. §§ 161.001, 161.206(a); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). In this case, the trial court found evidence of three predicate grounds to terminate Father's parental rights.[4] The trial court also found termination of Father's parental rights was in the best interest of the children.

---

[3] The Family Code provides that "[t]he referring court may also consider the record from the hearing before the associate judge, including the charge to and verdict returned by a jury." TEX. FAM. CODE ANN. § 201.015(c).

[4] The trial court found evidence Father

knowingly placed or knowingly allowed the child[ren] to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[ren],[;] … engaged in conduct or knowingly placed the child[ren] with persons who engaged in conduct which endangers the physical

When reviewing the sufficiency of the evidence, we apply the well-established standards of review. *See* TEX. FAM. CODE ANN. §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency).

## BEST INTERESTS

When considering the best interest of the child, we recognize the existence of a strong presumption that the child's best interest is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, we also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a) (West 2014).

In determining whether a child's parent is willing and able to provide the child with a safe environment, we consider the factors set forth in Family Code section 263.307(b). *See* TEX. FAM. CODE ANN. § 263.307(b). We also apply the *Holley* factors to our analysis.[5] *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These factors are not exhaustive. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *Id*. In analyzing these factors, the court must focus on the best interest of

---

or emotional well-being of the child[ren],[; and] … failed to comply with the provisions of a court order … [.]

*See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O).

[5] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013).

the child, not the best interest of the parent. *Dupree v. Tex. Dept. of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

Evidence that proves one or more statutory ground for termination may also constitute evidence illustrating that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002) (holding same evidence may be probative of both section 161.001(b)(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). "A best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *Id*.

### DISCUSSION

Father contends the evidence is legally and factually insufficient to support the trial court's determination that termination of his parental rights is in Jessie's, Jason's, and Joey's best interest.

On January 19, 2018, the Department received a referral alleging that A.N. made an outcry of domestic violence, stating that Mother attempted to stab Father. Detective Sergeant Brandon Teer of the Hondo Police Department testified that a forensic interview was conducted with A.N. at the Bluebonnet Child Advocacy Center. During A.N.'s interview, Center officials locked the Center doors because Father caused a disturbance in the parking lot, which required intervention from patrol officers.

As part of the investigation, Department Investigator Joe David Sanchez attempted to meet with and interview Father but Father informed Sanchez that he did not want to cooperate with the Department or the investigation. Sanchez testified Father was resistant throughout the entire investigation. When Sanchez attempted to establish a family safety placement with Mother, Father

advised Mother to disregard the safety placement and the Department. Sanchez additionally testified that Father indirectly threatened him via phone calls after the investigation concluded.

Detective Sergeant Teer confirmed that Father has had "extensive involvement with the Hondo Police Department." Detective Sergeant Teer described that involvement as "disturbances" involving domestic violence, including an extensive history of domestic violence between Father and Mother, as well as physical altercations between Father and other men. Mother testified Father did not physically abuse her but that there was "name calling, making me feel unwanted" and teaching their young daughter to call Mother a "beach." Mother specifically described an incident during which Father exhibited "road rage" toward her as she was driving on the highway. Mother testified Father drove beside her, yelled at her, called her names, and ordered her to pull over. Father also threw rocks at her car window while she was on the phone with the caseworker. Father verified on cross-examination that police had been called when he discharged a firearm on his property within the city limits. Father also verified he had been involved in physical altercations with the family of A.N.'s father, one of which resulted in Father being stabbed. When confronted with an offense report in which it was alleged Father "threw" Mother to the ground when she was six months pregnant and resulted in an arrest, Father responded "that was just something told to the officers." Detective Sergeant Teer confirmed that on many occasions, Mother and Father refused to pursue charges against each other. *See In re A.M.*, 495 S.W.3d 573, 581 (Tex. App.— Houston [1st Dist.] 2016, pet. denied) (relying in part on "history of assaultive conduct between the mother and father" in affirming best-interest finding); *see also In re C.H.*, 89 S.W.3d at 28 (noting that a history of assault is probative to the issue of a child's best interest).

Department caseworker Jennifer Clark became involved with the case at the time of the children's removal and took part in developing Father's service plan. Clark testified Father was required to undergo individual counseling, including drug and alcohol assessment ("OSAR") if a

drug test returned with a positive result. According to Clark, OSAR was scheduled for Father five times, but Father failed to comply or attend those sessions. Additionally, conservator worker Christie Knopp, who attempted to administer a drug test to Father on one occasion, testified that when she requested that Father submit to the drug test, Father "was very fidgety, and … refus[ed] to take the drug test." When Knopp pressed Father to take the test, Father responded "F[] it, it's dirty." Additionally, Mother testified she had walked in on Father as he was about to use methamphetamine, which resulted in an altercation between Mother and Father, because Father had told her "he wasn't going to do it again." Clark also testified Father had a previous family-based services case with the Department relating to drug issues. *In re L.G.R.*, 498 S.W.3d 195, 204 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("A parent's drug use supports a finding that termination is in the best interest of the child.")

Father was required to take part in the Batterers Intervention Prevention Program ("BIPP") because of the incidents of domestic violence and Father's pending criminal charge for family violence in which Mother was the complainant. Additionally, Father was ordered to undergo psychosocial examination and take parenting classes or address parenting in his counseling sessions. Clark arranged for the counselor to meet with Father at his father's home or elsewhere in Hondo. Clark testified Father completed five sessions of individual counseling but was unsuccessfully discharged from counseling because he arrived more than thirty minutes late or would verify attendance but then not attend counseling sessions. Clark then arranged counseling through a second provider but Father did not engage at all with the second provider. Clark further testified BIPP sessions could only be attended in San Antonio and that she arranged a referral for Father three times but Father did not attend orientation or classes. *See In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) (evidence that the appellant failed to comply with the court-ordered service plan supported the trial court's best-interest determination); *see also In re S.B.*, 207 S.W.3d 877,

887-88 (Tex. App.—Fort Worth 2006, no pet.) (considering the parent's drug use and failure to comply with a family-service plan in holding the evidence supported the best-interest finding).

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that termination of Father's parental rights was in the children's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re H.R.M.*, 209 S.W.3d at 108; *In re J.P.B.*, 180 S.W.3d at 573; *see also generally In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (recognizing an appellate court need not detail the evidence if affirming a termination judgment).

## CONCLUSION

For the foregoing reasons, we affirm the trial court's order terminating Father's parental rights.

Irene Rios, Justice