In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-21-00031-CV**
**IN THE INTEREST OF C.H. AND B.C.**

**On Appeal from the County Court at Law No. 3**
**Montgomery County, Texas**
**Trial Cause No. 19-05-06925-CV**

## MEMORANDUM OPINION

In a parental-rights termination case, the evidence before the trial court revealed that Mother's boyfriend, "Terry," starved Mother's children—Becky and Chase—and tied Chase to a bed so that he would stay there all night.[1] Chase was thirteen and Becky was seven years old when the police removed them from their home. At the conclusion of the suit, the trial court found in the Department's favor on its claims seeking to terminate Mother's rights to Becky and her rights to Chase.[2]

---

[1]We use pseudonyms to protect the identities of the minors and their right to privacy. *See* Tex. R. App. P. 9.8(a), (b).

[2]Chase's father is deceased. In Becky's case, the trial court terminated "the parent-child relationship, if any exists or could exist, between [her father, T.C.] and

After the trial court signed the judgment, Mother appealed. Raising two issues for our review, Mother argues the evidence does not support the findings the trial court relied on to terminate her parental-rights. We conclude her arguments lack merit, so we will affirm.

Background

In May 2019, the Department of Family and Protective Services sued Mother to terminate her rights to her children, Becky and Chase. The parties tried the case to the bench in a trial that ended in January 2021. The parties called just five witnesses to testify during the trial. One of the witnesses, an investigator employed by the Department, testified that in May 2019, the Department learned that police had taken two children to a local hospital after the police checked on the welfare of the children while they were home. A detective employed by the Montgomery County Sheriff's Office, Daniel Garner, provided most of the testimony relevant to most of the findings the trial court relied on in terminating Mother's rights. Garner's investigation started at the hospital. He went to the hospital to investigate whether

[Becky]." T.C. did not appeal. While the judgment terminated T.C.'s rights to Becky, the judgment then recites the trial court also found the "identity and location [of Becky's father] are unknown." Eight months before signing the judgment, the trial court appointed an attorney to represent the UNKNOWN FATHER. The judgment the trial court signed also terminated the UNKNOWN FATHER's rights to Becky. While the court-appointed attorney who represents the UNKNOWN FATHER filed a notice of appeal, he then moved to dismiss the appeal. In a separate order, this Court granted that motion.

Mother or Terry should be charged with injuring a child. While there, Detective Garner interviewed Mother, Becky, and Chase. After the interviews, the detective obtained a warrant authorizing Terry's arrest. And he charged Mother based on the role she played in causing the injuries that required the children to be admitted to the hospital.

During Mother's interview with the detective, she told him she knew Chase had a bruise on his wrist. In the interview, Mother also said Chase had the bruise there because Terry "ties [Chase] up at night so that he can't get up and go to the bathroom."[3] And Mother told Detective Garner that Terry "had been starving them[.]"

Detective Garner testified that during the interview, he asked Mother what she had done to prevent the abuse. According to the detective, Mother told him that when she interfered, Terry abused her too. In her interview, Mother also told the detective that when she tried to get away from Terry, he retaliates by hurting her. That said, Mother also told the detective that Terry never locked her inside the RV. She explained that on several occasions, she went shopping while Terry was not with her

---

[3]Significant parts of the background described above are from the 113-page officer's report Detective Garner filled out during his investigation of the case. The record shows that during the trial, the Department and Mother's attorney agreed to allow the trial court to admit most parts of the report without objection. In the opinion, we have deferred to the trial court's right as the factfinder in the trial to rely on the parts of the detective's report that the parties agreed to admit without objection in the trial.

in local stores. Mother testified that she and Terry had been living together for about two years before police removed the children from the RV. According to Mother, Terry did not allow her to send the children to school, he had instructed her not to speak with other members of her family, and during their relationship, he had choked her several times. The detective's report reflects that when police went to the RV, they found Becky and Chase wearing diapers. Mother told the detective that Terry made the children wear diapers.

After he completed Mother's interview, Detective Garner photographed the children in one of the rooms at the hospital. The trial court admitted the photos without objection during the trial. According to Detective Garner, the children were "very skinny" when he saw them. The photographs are consistent with the opinion the detective expressed that both children are malnourished.

During the investigation, Detective Garner also spoke to the doctor responsible who examined Becky and Chase the night the doctor admitted the children to the hospital. Detective Garner's report shows the doctor told him Chase was suffering from prolonged malnutrition and failure to thrive. The doctor found a stage one decubitus ulcer on Chase's buttocks, and an abrasion on Chase's wrist. The doctor advised the detective that Becky was suffering from poor dental hygiene. According to the detective's report, the doctor also said Becky had a low weight, given her age, which the doctor said was concerning for whether Becky was being

4

properly nourished. The doctor also told Detective Garner (according to the report) that Becky had a speech delay.

After finishing the investigation, the detective obtained a warrant authorizing Terry's arrest. At trial, Detective Garner testified he charged Mother with injury to a child by omission.[4] The detective testified he charged Mother with injuring Becky and Chase after learning in Mother's interview that she "had several opportunities to get those kids help." The exhibits in evidence include a final judgment filed in Montgomery County in Mother's criminal case, which resulted in her conviction by a district court of injuring a child for an injury that occurred in May 2019.[5] The judgment in the criminal case shows Mother pleaded guilty to an indictment charging her with injuring a child by omission. The judgment shows the trial court sentenced Mother to prison based on the conviction for forty years.

The evidence in the trial of the Department's claims shows that Becky and Chase were hospitalized for about a week in May 2019 before they were discharged from the hospital.[6] While Mother testified in the trial, the attorneys representing the parties did not ask her very many questions. At trial, Mother defended her failure to

---

[4]The record does not show whether the State ever indicted Terry based on the conduct the detective described in the trial.

[5]The Department never offered the indictment into evidence during the trial, so it is not in the record before us in Mother's appeal.

[6]The Department never introduced the children's medical records from their hospitalization into evidence during the trial.

protect her children from Terry by claiming she too was a victim of Terry's abuse. Yet when Mother testified, she agreed she is in no position to take care of her children since she is in prison. None of the witnesses, including Mother, addressed when Mother expected that she might get out of prison on parole.

Only two other witnesses testified in the trial that we have not yet mentioned: the caseworker employed by the Department and the CASA the trial court appointed for the children. Both witnesses, together with the Department's investigator, testified they thought it was in Becky's and Chase's best interest for the court to terminate Mother's parental rights. The caseworker explained that by terminating Mother's rights, Becky and Chase would be freed for adoption.

The caseworker also described the Department's plans for Becky and for Chase. According to the caseworker, Becky's foster family wants to adopt her. According to the caseworker, Becky is currently doing well in her placement. As to Chase, the caseworker said the Department has not yet identified a foster family that is interested in adopting him. Even though the Department had not yet identified a family interested in Chase, the caseworker testified that terminating Mother's rights to him would serve his interests because terminating Mother's rights would free Chase for adoption when the Department finds a family who wants him.

In the end, the trial court found that terminating Mother's parental rights to her children, Becky and Chase was appropriate based upon the requirements of

subsections D, E, and Q of the Family Code.[7] And the trial court found that terminating Mother's parental rights "to the children the subject of this suit is in the children's best interest."[8]

## Issues

In issue one, Mother argues the evidence doesn't support the trial court's findings under subsections D, E, and Q.[9] In issue two, Mother argues the evidence doesn't support the trial court's best-interest finding.[10]

### *Standard of Review*

In a case terminating the relationship between a parent and a child, the Department must prove that at least one of the statutory grounds for terminating the relationship exists and prove that terminating the relationship is in the child's best interest. Both the evidence presented to establish the grounds for termination and the best-interest findings must be proven by *clear and convincing evidence. Clear and convincing evidence* is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."[11]

---

[7]*See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (Q) (Supp.).
[8]*Id*. § 161.001(b)(2) (Supp.).
[9]*See id*. § 161.001(b)(1)(D), (E), (Q).
[10]*See id*. § 161.001(b)(2).
[11]*Id*. § 101.007; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005).

Mother challenges the legal and factual sufficiency of the evidence supporting all the grounds on which the trial court based its verdict. In a legal sufficiency review, we review "the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true."[12] In our review, we assume the factfinder resolved the disputed facts in a manner that favors its findings if a reasonable factfinder could have resolved them that way, but we disregard any evidence that a reasonable factfinder could have disbelieved or found incredible.[13] If no reasonable factfinder could have formed a firm belief or conviction that the facts the Department needed to prove were true, we will find the evidence legally insufficient.[14]

Mother also challenges the factual sufficiency of the evidence supporting the trial court's judgment. Under factual sufficiency review, we determine whether the evidence admitted during the trial would allow a reasonable factfinder to form a firm belief or conviction that the facts the Department needed to prove to prevail on its claims in the trial are true.[15] In our review, we credit all evidence favoring the Department when it prevailed in the trial if the evidence supporting its claim is clear and convincing.[16] But we also consider any evidence admitted during the trial that

---

[12]*In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).
[13]*Id.*
[14]*Id.*
[15]*Id.*
[16]*Id.*

8

is contrary to the factfinder's verdict in deciding whether the factfinder, in face of the conflicting evidence, could have resolved the dispute in the Department's favor.[17] If the factfinder could not have formed a firm belief or conviction that the Department's claims were true in light of all the evidence admitted in the trial, we will find the evidence insufficient to support the verdict, declare the verdict unsupported by clear and convincing evidence, and order a new trial.[18]

The Department secured several findings of fact tied to the statutory grounds the Department relied on in the trial to prove it claims seeking to terminate Mother's parental rights.[19] When reviewing a best-interest finding, we measure the evidence before the trial court considered when it resolved the disputed issue against the various factors in the Family Code and those that were discussed in *Holley*.[20] If there

---

[17]*Id.*

[18]*Id.*

[19]*See* Tex. Fam. Code Ann. § 161.001 (Supp.), § 161.001(b)(2); *see also In re J.L.*, 163 S.W.3d at 84.

[20]Tex. Fam. Code Ann. § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Under section 263.307, the Legislature suggest courts consider the following thirteen factors in deciding whether a parent is willing and able to provide the child a safe environment:

1. the child's physical and mental vulnerabilities;
2. the frequency and nature of out-of-home placements;
   the magnitude, frequency, and circumstances of the harm to the child;
3. whether the child has been the victim of repeated harm after the initial report and intervention by the department;
4. whether the child is fearful of living in or returning to the child's home;
5. the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;

is conflicting evidence about whether terminating the relationship is in the child's best interest, the factfinder may make a reasonable choice between the alternatives and may do so by weighing some of evidence more heavily than it weighs whatever other evidence there is that is contrary to the finding that the decision being made serves the child's best interest.[21] Still, evidence that is relevant to the grounds the factfinder relied on when it decided to terminate a parent's relationship with her

---

6. whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

7. whether there is a history of substance abuse by the child's family or others who have access to the child's home;

8. whether the perpetrator of the harm to the child is identified;

9. the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

11. the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

12. whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with:

(A)  minimally adequate health and nutritional care;

(B)  care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;

(C)  guidance and supervision consistent with the child's safety;

(D)  a safe physical home environment;

(E)  protection from repeated exposure to violence even though the violence may not be directed at the child; and

(F)  an understanding of the child's needs and capabilities; and

13. whether an adequate social support system consisting of an extended family and friends is available to the child.

[21]*See In re A.P.*, 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.).

child may also be used by the factfinder in making a decision about what would be in the child's best interest if the evidence is *clear and convincing*.[22]

Analysis

*Endangerment*

We begin with Mother's arguments challenging the trial court's endangerment findings, its subsection D and E findings. Under subsection D, the Department needed to prove that Mother *knowingly* placed or allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being.[23] While similar, subsections D and E are not identical. To prove Mother violated subsection D, the Department needed to prove Mother engaged in the conduct it claimed endangered the children *knowingly*.[24] To do that, subsection D required the Department to prove Mother was aware of the wrongdoing. But the Department was not required to prove Mother knew about the conduct to support a finding to terminate her parent-child relationships with her children under subsection E.[25]

Despite that difference, the Department, under either subsection D or E, did not have to prove Mother caused an actual physical injury to the children to show that Mother engaged in conduct endangering their physical or emotional well-being.

---

[22]Tex. Fam. Code Ann. § 161.001(b)(1), (2).
[23]*Id*. § 161.001(b)(1)(D).
[24]*Id*.
[25]*Id*. § 161.001(b)(1)(E).

That's because the term *endangerment* means the parent exposed the child to a loss or injury sufficient to jeopardize the child's physical or emotional well-being.[26] So testimony showing a parent exposed a child to a loss or injury is evidence a factfinder may choose to rely upon to decide if the parent endangered the child.[27] It follows that when the evidence shows parents engaged in conduct sufficient to create a life of uncertainty and instability for their child, the evidence allows reasonable factfinders to conclude the parents engaged in conduct endangering a child.[28]

*The Statutory Findings*

In her brief, Mother argues the evidence shows Terry alone is responsible for endangering Becky and Chase. According to Mother, the evidence shows she had no control over what he did to them because she was afraid he would retaliate against her and hurt her if she had attempted to intervene. Pointing to her interview with the detective, Mother notes she told him during the interview that she didn't know that Terry was tying Chase to his bed at night. Mother relies on this evidence to argue the evidence fails to clearly show she knew Terry was tying Chase to his bed.

But in her arguments, Mother fails to recognize the trial court's role as the factfinder in the trial. As the factfinder, the trial court could have rejected Mother's claim she was scared of what Terry would do to her and her evidence claiming she

[26]*See Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).
[27]*See In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009).
[28]*In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied).

did not know that Terry engaged in the various acts of abuse the Department proved when it presented its evidence in the trial. For example, the record contains clear and convincing evidence from which the trial court could reasonably conclude Mother was lying when she denied she knew Chase was being tied to his bed. The evidence the trial court could have reasonably relied on and the inferences it drew that are reasonable from the evidence include the following:

- When removed from the RV, the doctor found both children weighed much less than normal for their ages. The doctor diagnosed Chase with malnutrition. The doctor diagnosed Chase with an infection on his wrist. The doctor attributed the infection to a binding-type wound, which the doctor told the detective was consistent with being tied up. Mother told the detective Terry was starving the children. She gave the detective details about how Terry kept the children from eating properly, instances from which the trial court could have inferred that Mother was aware Terry was starving her kids. Mother also told the detective she never contacted anyone on the occasions when she went shopping to find someone to help her stop Terry from engaging in the abusive conduct directed at the children listed in the detective's report, information admitted without objection in the trial;

- When Detective Garner interviewed Mother, she told him that Terry was starving the children. The photos of the children show children who are underweight. As factfinder, the trial court could reasonably infer from the photos and the doctor's testimony that both children, when removed from the home, were malnourished;

- When interviewed by the detective, Mother said Terry "takes [Chase] and ties him up[.]" She told the detective said she asked Terry not tie Chase up. Mother also explained Terry made Chase wear diapers at night to keep him from getting up. Viewing Mother's statements in the light most favorable to the trial court's verdict, her testimony she did not know what Terry was doing to her children is inconsistent with her claim she did not know about Terry conduct but instead first learned of it the night the police removed the children from the home. The

13

detective's report shows the RV the family was living in was small. In Mother's interview with the detective, she described the size of the RV, how many bedrooms it had, and she told the detective her children shared a room.

- Mother knew Becky and Chase were not going to school and that they had not been going to school for nearly two years. Mother also knew the children were not being homeschooled. Mother's only excuse for keeping the children from school was that Terry instructed her to keep them out of school; and

- The pictures of the children show to children who are thinner than what would be normally expected for a teenager and a seven-year-old child. The testimony and photos of the children allowed the trial court to infer that Mother was aware that both children were underweight because neither was getting enough food. As the only biological parent who was living with the children, the trial court could have inferred that Mother consciously disregarded the interests they have in a parent who was protecting them from harm, providing for their basic needs, and raising them in home safe from those who engaged in conduct that endangered them.

In her brief, Mother is asking that this Court reweigh the evidence and replace the inferences the trial court drew from the evidence with inferences she would have liked the trial court to make because they are more favorable to the arguments she has relied on in her appeal. But the inferences the trial court chose to draw from the evidence are reasonable given all the evidence that was admitted before the court during the trial. For instance, as the factfinder the trial court could reasonably reject Mother's excuse claiming she was the victim of domestic violence to excuse her failure to protect her children from her boyfriend who was starving them. Mother provided the trial court with no objective evidence to prove the conditions the

14

children were suffering resulted from anything except neglect. She provided the trial court with no police reports or photographs supporting her claim that she ever reported Terry based on her claim he had abused her in the past. In the end, the evidence before the trial court allowed it, acting as the factfinder, to conclude Mother engaged in a course of conduct that shows she knowingly endangered Becky and Chase.[29]

For these reasons, we reject Mother's arguments that the trial court's subsection D and E findings are supported by insufficient evidence.[30] Given that conclusion, we need not address Mother's remaining argument challenging the trial court's subsection Q finding because resolving Mother's argument as to that finding is not necessary to our resolution of her appeal.[31]

---

[29]*See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

[30]Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E); *City of Keller*, 168 S.W.3d at 819; *In re J.F.C.*, 96 S.W.3d at 266; *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003).

[31]*See* Tex. R. App. P. 47.1 (explaining that the court's opinion must address those issues necessary to the court's final disposition of the appeal); Tex. Fam. Code Ann. § 161.001(b)(1)(Q) (inability to care for child due to knowingly engaging in criminal conduct); *In re S.M.R.*, 434 S.W.3d 576, 580 (Tex. 2014) ("proof of any one ground will support a judgment terminating parental rights" when the evidence also shows that terminating the parent-child relationship is in the child's best interest).

*The Best-Interest Finding*

In issue two, Mother contends the evidence is legally and factually insufficient to support the trial court's best-interest finding. To prove what outcome is in a child's best interest, the Department need not produce evidence in the trial on each of the factors used to decide whether terminating the parent-child relationship is in the child's best interest.[32]

Here, the record contains clear and convincing evidence that shows Mother engaged in a course of conduct that endangered the children. That evidence includes a judgment proving Mother was convicted by a court of endangering at least one of her children, by omission. The judgment from Mother's criminal case together with the other evidence in the trial shows Mother left Becky and Chase in a home where they were being starved. By failing to protect Chase from Terry, Mother allowed Terry to tie chase up and to require her children, a teenager and a seven-year-old child, to wear diapers. That evidence together with Mother's conviction for endangering a child is evidence that defeats her arguments claiming the evidence is insufficient to support the trial court's best-interest finding.[33]

---

[32]*See In the Interest of C.H.*, 89 S.W.3d 17, 27 (Tex. 2002) ("But we have never held that these considerations are exhaustive, or that all such considerations must be proved as a condition precent to parental termination.").

[33]*See In re A.M.*, 495 S.W.3d 573, 581 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

16

Generally, the outcome that is in a child's best interest can be proven by either direct or circumstantial evidence. And in deciding what is in a child's best interest, the factfinder may make subjective evaluations on the question by observing the parent when the parent is in court.[34] What serves the child's best interest is examined from the standpoint of the child, not that of the parent.[35] For that reason, evidence that a parent harmed or abused a child may be particularly relevant in supporting a trial court's best-interest finding.[36]

At trial, Mother offered but one excuse for the abuse the children endured in the home—she claimed she was also a victim of Terry's abuse. But in its role as the factfinder, however, the trial court could have chosen to find Mother knew what Terry was doing to her children and what she needed to do to protect them from him. The evidence before us also reveals Mother has relatives who live in Texas. That said, the evidence also shows she never asked them for help. Mother also indicated she had money she could have used to help protect the children from Terry by leaving him. Instead, Mother gave the money she was getting from the government

---

[34]*In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

[35]*See In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.) (citing *In re S.A.P.*, 169 S.W.3d 685, 707 (Tex. App.—Waco 2005, no pet.)).

[36]*See* Tex. Fam. Code Ann. § 263.307(b) (history of harm or abuse to a child is a factor in determining best interest); *Holley*, 544 S.W.2d at 371-72 (current and future danger to the children is a factor in determining best interest).

to Terry. We conclude the trial court's decision to reject Mother's excuse for her conduct is reasonable based on the evidence in the record.[37]

Three witnesses, the Department's caseworker, the Department's investigator, and the CASA, testified they thought it would serve the children's best interest for the court to terminate Mother's rights. At trial, Mother offered no plans for the children. She also did not explain what her plans for them were when she was interviewed by the detective. At trial, Mother testified she could not take care of the children because she is in prison.

Unlike Mother, the Department presented a plan that shows that currently, both children have improved while in foster care. The Department's evidence established that it was planning to put the children up for adoption, Becky by her current foster family and Chase by a family not yet identified. On this record, we conclude the trial court could have reasonably inferred the Department's plan was superior to the plan (or lack thereof) offered by Mother.

Having carefully reviewed the evidence, we conclude the trial court's best-interest finding is supported by clear and convincing evidence.[38] For that reason, issue two is overruled.

---

[37]*See In re J.O.A.*, 283 S.W.3d at 346 (recognizing "the factfinder, not the appellate court, is the sole arbiter" on matters of the credibility of the witnesses and their demeanor).

[38]*See* Tex. Fam. Code Ann. §§ 161.001(b)(2), 263.307(a); *see also In re J.F.C.,* 96 S.W.3d at 266; *Holley*, 544 S.W.2d at 371-72.

Conclusion

Since we have concluded Mother's arguments lack merit, the trial court's judgment is

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on May 11, 2021
Opinion Delivered July 15, 2021

Before Golemon, C.J., Kreger and Horton, JJ.