**Opinion issued July 28, 2016**



In The

# Court of Appeals

For The

## First District of Texas

————————————

### NO. 01-16-00130-CV

————————————

### IN THE INTEREST OF A.M. & A.M., CHILDREN

---

**On Appeal from the 314th District Court**
**Harris County, Texas**
**Trial Court Case No. 2014-04967J**

---

## O P I N I O N

After a bench trial, the trial court terminated the parental rights of A.M., the biological father, and K.M., the biological mother, of A.M. and A.M, their children (hereafter "A.M.M.," the daughter, and "A.M., Jr.," the son). The father and the mother each separately appealed the termination decree. The father's counsel argues the insufficiency of the evidence to support the grounds for termination,

namely endangerment and failure to comply with a court order, and that termination was in the children's best interest. *See* TEX. FAM. CODE § 161.001(b)(1)(E), (O), (2). The mother's counsel filed a motion to withdraw and an *Anders* brief.

We affirm the termination decree. However, in consideration of appointed counsel's continuing obligation to represent the mother for purposes of any further appellate review, we deny the motion to withdraw.

**Background**

In September 2014, the Texas Department of Family and Protective Services received a report regarding A.M.M. and A.M., Jr., alleging that their parents had been neglectful, had engaged in domestic violence for which the mother had been arrested, and had experienced mental health issues. In addition, the report stated that the mother had been using methamphetamine and that A.M.M., who was seven years old, was autistic, nonverbal, and wore diapers. The parents submitted to drug testing, and the mother tested positive for amphetamines and methamphetamine, while the father tested positive for marijuana. The father was aware that the mother had been using methamphetamine, and he told a Department caseworker that she sometimes left small rocks of crystal meth around the house. The children were removed from their parents' home and placed in a foster home.

Throughout most of the pendency of the case, the Department's goal was family reunification, and both parents worked to complete the services ordered by the court, such as attending hearings, parenting classes, domestic abuse classes, and Alcoholics Anonymous/Narcotics Anonymous meetings, as well as visiting with their children and participating in therapy and substance-abuse counseling.

But the parents continued to test positive for drug use. The father tested positive for amphetamine, methamphetamine, and marijuana based on hair follicle testing in October and November 2014. In May 2015, the father tested positive for amphetamine and methamphetamine based on hair follicle testing. In September 2015, the father had another positive test result for methamphetamine.

In October 2014, November 2014, and February 2015, the mother tested positive by hair-follicle testing for amphetamine and methamphetamine. In October 2014, she also tested positive for marijuana. In May 2015, she refused to take a court-ordered urine drug screen and walked out of the testing facility before a sample could be collected. This refusal was considered a positive test result. In September 2015, the mother tested positive for codeine and morphine as well as methamphetamine.

The Department's goal changed to termination of parental rights as trial approached. Although trial was initially set for September 3, 2015, it was continued to late September after the mother was arrested for violating the terms of

deferred adjudication, which had been imposed in connection with her assault on the father in the summer of 2014. Trial was held on September 22, 2015 and January 14, 2016.

At trial, the evidence showed that both parents had completed their family plans of service, but the Department had lingering concerns about returning the children to their care, primarily based on the evidence of continued drug use and their personal histories. The mother had used drugs for 17 years, she had schizophrenia and depression, and she was hospitalized twice in 2014 for suicidal thoughts and attempts. She also had a history discontinuing prescribed medication in favor of self-medicating with methamphetamine. The father had anger management issues. Both parents had engaged in domestic violence toward each other.

Although the father had numerous positive drug test results, he also had drug tests during the pendency of this case that were negative. In light of the conflicting evidence, a question was raised during the first part of trial about whether the Department should be appointed permanent managing conservator to provide the parents more time to demonstrate sobriety as opposed to terminating their parental rights. The court continued the trial for three months and ordered the parents to submit to additional drug testing. Both parents tested positive for methamphetamine in September 2015.

When the trial resumed in January 2016, the parents had separated. The father had an apartment and had requested housing through the Veterans' Administration. He was working as a stocker at a fabric store, earning $8 per hour. He was considering reenlisting in the Army, primarily to secure medical and dental benefits for his children. The mother was living with her mother, and she had been working at a fast-food restaurant for several months. She testified that she had provided for her children financially during the pendency of the case by giving them clothing, school supplies, food, and toys.

The Department continued to seek termination of parental rights because the parents tested positive for methamphetamine at the beginning and the end of the case. Bruce Jeffries, who had testified during the first part of the trial in September, had been acknowledged by all parties as an expert on the interpretation of drug test results. He testified that the hair follicle tests "go back 90 days." Thus, a positive test result in February or May 2015 could not be attributed to use of methamphetamine in September 2014.

Despite the test results, both parents denied recent use of methamphetamine. The mother testified that she last used methamphetamine in September 2014, before the children were removed. Jeffries had testified that the tests are capable of detecting the presence of a marijuana metabolite indicating the use of marijuana by the test subject in the prior three months. Yet the father testified that he last used

methamphetamine in December 2014, and the September 2015 positive hair follicle test was a consequence of that use.

Like the Department, Beverly Beck, the "Child Advocate" volunteer who had been involved with the case since December 2014, also favored termination of the parents' rights, based on the evidence of the parents' continued use of illegal drugs as well as on the mother's mental-health history. She believed that the children were bonding with their current caregivers and adoption was in their best interest.

Sean Cooper, the Department's caseworker, also testified that the children were bonded to their caregivers, who were interested in adopting them. Child advocate reports, which were admitted at trial, showed that A.M.M. was progressing in foster care, gaining self-care skills such as climbing stairs, pulling up her pants, eating with a spoon, holding objects, following a schedule, using sign language to communicate, managing transitions, and receiving speech and occupational therapy. A.M., Jr. was receiving counseling and speech therapy, had attended camp, and was growing and playing appropriately. Nevertheless, Cooper also acknowledged that the children remained bonded to their parents, and A.M., Jr. had expressed a desire to remain with his mother and father. Cooper testified that neither child had alleged physical abuse or neglect on the part of the parents.

The trial court terminated the parental rights of both parents, finding that each had endangered the children by engaging "in conduct or knowingly" placing the children with people "who engaged in conduct which endangers the physical or emotional well-being" of the children and by failing to comply with the provisions of a court order that established what actions were necessary to obtain return of the children. *See* TEX. FAM. CODE § 161.001(b)(1)(E), (O). The court also found that termination of the parents' parental rights was in the best interest of the children. *See id.* § 161.001(b)(2).

Each parent filed a notice of appeal. The father's attorney filed a brief, and the mother's attorney filed an *Anders* brief and a motion to withdraw.

**Analysis**

**I.     The father's appeal**

The father raises three sufficiency issues in his appeal. He contends that the evidence is insufficient to support the trial court's findings that he committed the predicate acts of endangerment and failing to comply with a court order and that termination of his parental rights was in his children's best interests.

Protection of the best interests of the child is the primary focus of the termination proceeding in the trial court and our appellate review. *See In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003). A parent's right to the care, custody, and control of his children is a precious liberty interest protected by the Constitution. *See, e.g.*,

*Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 2060 (2000); *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982). Accordingly, termination proceedings are strictly scrutinized on appeal. *See Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Clear and convincing evidence must support the decision to terminate parental rights. *In re J.F.C.*, 96 S.W.3d 256, 263–64 (Tex. 2002); *see also Santosky*, 455 U.S. at 747–48, 102 S. Ct. at 1391–92. Evidence is legally sufficient if it is "such that a factfinder could reasonably form a firm belief or conviction about the truth of the matter on which the State bears the burden of proof." *J.F.C.*, 96 S.W.3d at 265–66; *see* TEX. FAM. CODE § 101.007. We review "the evidence in the light most favorable to the judgment," meaning that we "must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *J.F.C.*, 96 S.W.3d at 266. "If, after conducting its legal sufficiency review of the record evidence, a court determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient." *Id.*

In a factual sufficiency review, we consider the entire record, including evidence both supporting and contradicting the finding. *See id.*; *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). "'If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding

is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.'" *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (quoting *J.F.C.*, 96 S.W.3d at 266).

In proceedings to terminate the parent-child relationship, the Department must establish by clear-and-convincing evidence that one or more of the acts or omissions listed in Family Code section 161.001(b)(1) occurred and that termination is in the best interest of the child. TEX. FAM. CODE § 161.001(b). Both elements must be established, and termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't. of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

## A. Predicate finding

The Department sought termination of the father's parental rights on grounds of endangerment, *see* TEX. FAM. CODE § 161.001(b)(1)(E), and failure to comply with a court order, *see id.* § 161.001(b)(1)(O). "Only one predicate finding" under section 161.001(b)(1) "is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *A.V.*, 113 S.W.3d at 362. The predicate act of endangerment as alleged in this case is satisfied if the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE § 161.001(b)(1)(E). In this

context, "endanger" means to expose to loss or injury or to jeopardize. *Boyd*, 727 S.W.2d at 533. The term means "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment," but "it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *Id.* at 533. To determine whether termination is justified, courts may look to parental conduct both before and after the child's birth. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). The conduct need not occur in the child's presence, and it may occur "both before and after the child has been removed by the Department." *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

The Supreme Court of Texas has acknowledged that "a parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct." *J.O.A.*, 283 S.W.3d at 345. Our court has explained that illegal drug use may support termination under section 161.001(b)(1)(E) because "it exposes the child to the possibility that the parent may be impaired or imprisoned." *Walker*, 312 S.W.3d at 617. Because it significantly harms the parenting relationship, drug activity can constitute endangerment even if it transpires outside the child's presence. *See Boyd*, 727 S.W.2d at 533; *J.O.A.*, 283 S.W.3d at 345; *Walker,* 312 S.W.3d at 617. In addition, "a parent's decision to engage in illegal drug use during the pendency of a termination suit, when the parent is at risk of

losing a child, may support a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being." *In re K.C.F.*, No. 01-13-01078-CV, 2014 WL 2538624, at *9–10 (Tex. App.—Houston [1 Dist.] 2014, no pet.) (mem. op.).

The father tested positive for marijuana in September, October, and November 2014, and for methamphetamine in October 2014, November 2014, May 2015, and September 2015. Considering Jeffries's testimony that the hair follicle test provides evidence of use of marijuana over the prior three months, the September 2015 test could reflect use of methamphetamine from June or July 2015 through September 2015, but not from any time prior to the removal of the children. Because the evidence showed that the father engaged in illegal drug use during the pendency of the termination suit, when he knew he was at risk for losing his children, we hold that the evidence was legally sufficient to support a finding of endangerment. *See J.F.C.*, 96 S.W.3d at 266; *Walker*, 312 S.W.3d at 617; *J.O.A.*, 283 S.W.3d at 345.

The father denied having used methamphetamine since December 2014. However, the children were removed in September 2014. In December 2014, the father already knew that he was at risk of losing his children. In his brief, the father argues that the evidence is not sufficient because there is no evidence that he engaged in "a course of conduct" that endangered his children. He suggests that his

11

drug use, as evidenced by sporadic positive test results, does not constitute an endangering course of conduct. However, the statute does not require "a course of conduct." The evidence shows that the father engaged in illegal drug use during the pendency of this termination suit, and no evidence directly contradicts that. Considering the entire record, we hold that the evidence is factually sufficient to support the trial court's finding. *See J.F.C.*, 96 S.W.3d at 266.

We overrule the father's first issue. The father's second issue challenges the sufficiency of the evidence for the alternative predicate finding—that he failed to comply with a court order. However, because we have found that the evidence is both legally and factually sufficient to support the predicate finding of endangerment, we need not address the father's second issue. *See A.V.*, 113 S.W.3d at 362.

## B.    Best interest of the children

A strong presumption exists that a child's best interests are served by maintaining the parent-child relationship. *In re L.M.*, 104 S.W.3d 642, 647 (Tex. App.—Houston [1st Dist.] 2003, no pet.). In determining whether termination of a father's parental rights was in the children's best interest, we consider several nonexclusive factors, including (1) the children's desires, (2) the current and future physical and emotional needs of the children, (3) the current and future physical danger to the children, (4) the parental abilities of the person seeking custody,

(5) whether programs are available to assist the person seeking custody in promoting the best interests of the children, (6) plans for the children by the person seeking custody, (7) stability of the home, (8) acts or omissions of the parent that may indicate that the parent-child relationship is improper, and (9) any excuse for acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). The Department is not required to prove all of these factors, and the absence of evidence about some factors does not preclude the factfinder from reasonably forming a strong conviction that termination is in the children's best interest. *See C.H.*, 89 S.W.3d at 27. Evidence establishing one of the predicate acts under section 161.001(b)(1) also may be relevant to determining the best interests of the children. *See id.* at 27–28.

In this case, the *Holley* factors generally favor termination. Although A.M., Jr. is developing and growing in a typical manner, his sister, A.M.M., is autistic and has numerous special needs. She has and will have many physical and emotional needs beyond that of a typically developing child, requiring specialized therapies and other interventions to meet her potential. However, considering the father's drug use, anger issues, and history of involvement in domestic violence, the factors of physical danger, parental abilities, stability of the home, and improper acts of the parent weigh against a continuation of the parent-child relationship.

The *Holley* factors are not the sole considerations relevant to determining the best interests of the children. *See In re A.C.*, 394 S.W.3d 633, 641–42 (Tex. App.—Houston [1st Dist.] 2012, no pet.). The permanent placement of the child in a safe environment is presumed to be in the child's best interest. TEX. FAM. CODE § 263.307(a). Factors relevant to determining whether a parent is willing and able to provide a safe environment include: (1) the child's age and vulnerabilities; (2) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (3) willingness and ability of the child's family to seek, accept, and complete counseling services and cooperate with agency supervision; (4) the willingness and ability of the child's family to effect positive changes within a reasonable period of time; and (5) whether the child's family demonstrates adequate parenting skills. *See id.* § 263.307(b) (identifying best-interest factors applicable to pretrial permanency hearings).

A.M.M. was nine years old, and A.M., Jr. was seven years old at the time of the termination decree. Because of her inability to communicate, A.M.M. was particularly vulnerable. There was a history of assaultive conduct between the mother and the father. The parents testified that they had separated, but their actual separate residences had not been confirmed at the time of trial. The child advocate testified that she went to their last known residence, a house the parents had leased, just before the January 2016 hearing and found it vacant. Although the father had

accepted services from the Department in an attempt to regain custody of his children, he failed to cooperate by not keeping the Department informed of his contact information. And his willingness and ability to improve were called into question by the fact that he continued to test positive for methamphetamine in September 2015, less than a month after receiving his certificate of completion of substance-abuse group counseling.

In contrast, the evidence presented about the foster parents showed that they had provided a stable home for A.M.M., who was learning to communicate through sign language, and learning basic but vital self-help skills like climbing stairs and how to pull up her own pants. Both A.M.M. and A.M., Jr. were receiving counseling, bonding with the foster family, and thriving. Importantly, the foster parents were interested in adopting both children.

Considering the entire record, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of the father's parental rights was in the children's best interest. We overrule the father's challenge to the sufficiency of the evidence to support the best-interest finding.

## II. The mother's appeal

The mother's appointed counsel has moved to withdraw, and she filed a brief stating that after thoroughly reviewing the record, she has concluded that there are no non-frivolous grounds for appeal.

The procedures set forth in *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396 (1967), are applicable to an appeal from a trial court's order terminating parental rights when an appellant's appointed appellate counsel concludes that there are no non-frivolous issues to assert on appeal. *See In re P.M.*, No. 15-0171, 2016 WL 1274748, at *3 n.10 (Tex. Apr. 1, 2016) (citing *In re D.A.S.*, 973 S.W.2d 296, 297 (Tex. 1998)). The mother's counsel's brief meets the minimum *Anders* requirements by presenting a professional evaluation of the records and stating why there are no arguable grounds for reversal on appeal. *See Anders*, 386 U.S. at 744, 87 S. Ct. at 1400.

Ordinarily in these circumstances, counsel will inform the court that she has, at a minimum, delivered to her client a copy of her motion to withdraw and *Anders* brief and informed her client of her right to review the record and file a pro se response. *See, e.g.*, *In re K.D.*, 127 S.W.3d 66, 67 (Tex. App.—Houston [1st Dist.] 2003, no pet.). The mother's counsel in this case informed the court that she sent her brief and motion to withdraw to her client at the last known address by both regular and certified mail, and both mailings were returned marked as undeliverable due to lack of a forwarding address.[1]

---

[1] The mother's counsel also attempted to contact her client by sending the same documents by certified mail to the father's last known address, but counsel was unable to verify if the father had given the documents to the mother. Counsel further informed the court that although the mother once had informed her by text message that she wished to appeal, the mother did

We have independently reviewed the entire record. We conclude that there are no arguable grounds for review, no reversible error exists, and therefore the mother's appeal is frivolous. *See Anders*, 386 U.S. at 744, 87 S. Ct. at 1400 (emphasizing that the reviewing court—and not counsel—determines, after full examination of proceedings, whether the appeal is wholly frivolous); *K.D.*, 127 S.W.3d at 67. Accordingly, we affirm the trial court's termination decree as to the mother.

However, we deny counsel's motion to withdraw. In the parental termination context, "counsel's belief that the client has no grounds to seek further review from the court of appeals' decision" is not "good cause" sufficient to justify counsel's withdrawal. *See P.M.*, 2016 WL 1274748, at *3.[2] Instead, counsel's duty to her

---

not respond to further text messages, she declined to respond to her counsel's text-message request for a current address, and she failed to provide a current address on the last day of trial in January 2016. The clerk of this court independently has attempted to send the mother a letter notifying her that her counsel had filed an *Anders* brief and a motion to withdraw, and informing her that she had right to request a copy of the appellate record and to file a pro se response. This document was returned, marked "RETURN TO SENDER NOT DELIVERABLE AS ADDRESSED UNABLE TO FORWARD."

[2] Since the Supreme Court of Texas decided *P.M.*, most courts of appeals affirming parental termination orders after receiving *Anders* briefs have denied the attorney's motion to withdraw. *See, e.g.*, *In re M.A.T.*, No. 11-16-00002-CV, 2016 WL 3573218, at *1 (Tex. App.—Eastland June 9, 2016, pet. filed); *In re G.W.R.*, No. 07-16-00116-CV, 2016 WL 2941078, at *1 (Tex. App.—Amarillo May 17, 2016, no pet.) (mem. op.); *S.O. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-1500743-CV, 2016 WL 2719459, at *1

client extends through the exhaustion or waiver of "all appeals." TEX. FAM. CODE § 107.016(2)(B). If the mother wishes to pursue an appeal to the Supreme Court of Texas, "appointed counsel's obligations can be satisfied by filing a petition for review that satisfies the standards for an *Anders* brief." *P.M.*, 2016 WL 1274748, at *3.

## Conclusion

We affirm the decree of the trial court. We deny the motion to withdraw filed by the mother's appointed counsel.

Michael Massengale
Justice

Panel consists of Justices Higley, Bland, and Massengale.

---

(Tex. App.—Austin, May 4, 2016, no pet.) (mem. op.); *In re W.I.*, No. 09-15-00475-CV, 2016 WL 1468983, at *1 (Tex. App.—Beaumont, Apr. 14, 2016, no pet.) (mem. op.); *In re J.E.L.*, No. 04-15-00634-CV, 2016 WL 1359354, at *1 (Tex. App.—San Antonio Apr. 6, 2016, no pet.) (mem. op.). One court granted the motion to withdraw and abated the appeal to enable the trial court to appoint new counsel to pursue a petition for review. *See In re M.M.*, No. 02-16-00004-CV, 2016 WL 2586640, at *1 (Tex. App.—Fort Worth May 5, 2016, no pet.) (mem. op.).