**Opinion filed March 28, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00234-CV

_____

## IN THE INTEREST OF J.S., A.B., H.O., AND C.O., CHILDREN

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 10718-CX**

## O P I N I O N

This is an accelerated appeal from an order in which the trial court terminated the parental rights of the mother, S.S., to her four children, J.S.,[1] A.B., H.O., and C.O.[2]  On appeal, Appellant (S.S.) presents four issues in which she challenges the sufficiency of the evidence to support the trial court's findings and the trial court's

---

[1]We use pseudonyms to protect the identities of the children.  TEX. R. APP. P. 9.8(b)(2).

[2]The trial court also terminated the parental rights of the children's fathers.  Neither of the fathers appealed.

decision to "allow" the two older children (J.S. and A.B.) to attend and observe the final hearing. We affirm the trial court's order of termination.

## I. *Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2023). To terminate one's parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U),[3] and that termination is in the best interest of the child. *Id.* at § 161.001(b)(2). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." FAM. § 101.007 (West 2019).

In this case, the trial court found that clear and convincing evidence established that Appellant committed at least one of the acts listed in Section 161.001(b)(1)—specifically, that Appellant: (1) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children; and (2) failed to comply with the provisions of a court order that specifically established the actions necessary for Appellant to obtain the return of the children who had been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services (the Department) for not less than nine months as a result of the children's removal from Appellant under Chapter 262 for the abuse or neglect of the

---

[3]We note that the legislature recently amended Section 161.001 to include additional requirements for trial courts in termination suits filed by the Department of Family and Protective Services and a new ground for termination that relates to convictions for solicitation of a minor; however, these amendments only apply to suits filed on or after September 1, 2023. Act of May 26, 2023, 88th Leg., R.S., ch. 728, §§ 1, 3, 2023 Tex. Sess. Law Serv. 1770, 2177 (codified at FAM. § 161.001(b)(1)(V)); Act of May 29, 2023, 88th Leg., R.S., ch. 675, §§ 1, 8, 2023 Tex. Sess. Law. Serv. 1646–47 (codified at FAM. § 161.001(f), (g)). The original petition to terminate the parent-child relationship in this case was filed prior to September 1, 2023. We therefore apply the statute in effect on the date the above suit was filed.

children.  *See id.* § 161.001(b)(1)(E), (O).  The trial court further found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights was in the children's best interest.  *See id.* § 161.001(b)(2).  Appellant challenges both the legal and factual sufficiency of the evidence to support the trial court's findings.

In reviewing a legal sufficiency challenge, we must decide whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true."  *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022).  Cognizant of the required appellate deference to the factfinder, "we look at all the evidence in the light most favorable to the finding, assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible."  *Id.* (internal quotation marks omitted).  "However, we may not disregard 'undisputed facts that do not support the finding,' and the factfinder is 'the sole arbiter of the witnesses' credibility and demeanor.'"  *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) (then quoting *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021)).  As such, when considering the credibility of the evidence presented, we may not substitute our judgment for the factfinder.  *J.F.-G.*, 627 S.W.3d at 316.

In assessing whether the evidence is factually sufficient, we weigh the disputed evidence that is contrary to the finding against all the evidence that favors the finding.  *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018).  We give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent.  *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002); *In re L.C.C.*, 667 S.W.3d 510, 512 (Tex. App.—Eastland 2023, pet. denied).

With respect to the best interest of a child determination, no unique set of factors need be proved. *L.C.C.*, 667 S.W.3d at 513; *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). Further, the best interest determination does not restrict the proof to any specific factor or factors. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). However, courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

To support a best interest finding, the Department is not required to prove each *Holley* factor; in some circumstances, evidence of the presence of only one factor will suffice. *C.H.*, 89 S.W.3d at 27; *In re D.M.*, 452 S.W.3d 462, 473 (Tex. App.—San Antonio 2014, no pet.). Additionally, the same evidence that proves one or more statutory grounds for termination may also constitute sufficient, probative evidence illustrating that termination is in the children's best interest. *C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The absence of some *Holley* considerations does not preclude the factfinder from reasonably inferring or forming a strong conviction or belief that termination is in the children's best interest, particularly if the evidence indicates that the parent-child relationship and the parent's conduct has endangered the safety and well-being

4

of the children. *C.H.*, 89 S.W.3d at 27. This is so because the best interest analysis evaluates the best interest of the children, not the parent. *In re E.C.R.*, 638 S.W.3d 755, 767 (Tex. App.—Amarillo 2021, pet. denied) (citing *In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.)).

In this regard, the factfinder may measure a parent's future conduct by her past conduct and determine whether termination is in the children's best interest. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied); *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.). The factfinder may infer that a parent's past conduct that endangered the safety and well-being of the children may recur in the future if the children are returned to the possession of the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied). Further, the factfinder may infer from a parent's past inability to meet the children's physical and emotional needs an inability or unwillingness by the parent to meet the children's physical and emotional needs in the future. *J.D.*, 436 S.W.3d at 118; *see also In re A.S.*, No. 11-16-00293-CV, 2017 WL 1275614, at *3 (Tex. App.—Eastland Mar. 31, 2017, no pet.) (mem. op.).

II. *The Evidence Presented at Trial*

The record shows that the Department first investigated Appellant in 2010 for physically abusing J.S., who was an infant at the time. The Department later investigated Appellant in 2012 for neglectful supervision of one-year-old A.B. and two-year-old J.S., and again in August of 2013 through 2014 for physically abusing them. Despite the Department's findings regarding those allegations, J.S. and A.B. were not removed until Appellant was arrested in 2015 after a physical altercation with her sister.

While Appellant was working Family-Based Safety Services (FBSS) for her 2015 case, she was pregnant with H.O., failed to cooperate with the Department, and continued testing positive for cocaine and marihuana use. Three-year-old A.B. and four-year-old J.S. also tested positive for cocaine. Appellant's 2015 Family Service Plan noted that she was "in denial of [the] use of illegal substances," notwithstanding the results of her positive drug tests. The service plan further indicated that J.S. suffered from "Sickle Cell," and had special medical needs. J.S. and A.B. were ultimately returned to Appellant upon her completion of the required services, and that case was closed.

H.O. was born in April of 2015, and C.O. was born in February of 2016. The Department initiated another investigation in 2017 after Appellant was arrested for drug possession while caring for H.O. and C.O. All four children tested positive for cocaine in May of 2018. The children were later removed from Appellant's possession; however, she again successfully completed her court-ordered services to secure the children's monitored return.

The investigation that resulted in the final removal of the children began on April 26, 2022, when Appellant was arrested for possession of methamphetamine with intent to deliver; she was subsequently placed on deferred adjudication community supervision for a period of eight years. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(c) (West Supp. 2023). In mid-2023, Appellant's community supervision was transferred to a "high-medium risk" supervisor due to her noncompliance with the rules of community supervision.

The Department created a Family Plan of Service for Appellant, which the trial court amended, approved, and adopted on August 12, 2022. As part of Appellant's court-ordered service plan, she was required to maintain stable housing

that was free of drugs, violence, and other illegal activity. She was further required to submit to random drug testing and "refrain from the use of illegal drugs."

Appellant tested positive for amphetamines, methamphetamines, cocaine, and marihuana throughout the pendency of this case. Appellant tested positive for cocaine and marihuana in February of 2023, and she tested positive for marihuana in April of 2023. The children were also drug tested in May of 2022—C.O. was positive for amphetamine and methamphetamine, H.O. was positive for cocaine, and J.S. and A.B. were negative for all substances.

Appellant admitted that she smoked marihuana after the children's removal "[b]ecause [she] was stressed." Despite her admissions and numerous positive drug tests, Appellant insisted that she did not have a drug problem and could care for her children even when under the influence of marihuana. She acknowledged, however, that sometimes she did not have her children attend school, and that her children were exposed to drugs while in her sole care and custody.

The trial court terminated Appellant's parental rights under Section 161.001(b)(1)(E) and (O) and found termination to be in the best interest of the children. This appeal followed.

### III. *Analysis*

#### A. *Termination under Subsection (E) – Endangerment*

In Appellant's first and second issues, she challenges the legal and factual sufficiency of the evidence to prove grounds (E) and (O). Although only one statutory ground is necessary to support termination, we must address a parent's challenges to a trial court's findings under subsections (D) or (E), as they may have implications for the parent's rights to other children. *See* FAM. § 161.001(b)(1); *In re N.G.*, 577 S.W.3d 230, 234–35 (Tex. 2019) (addressing due process and due course of law considerations with respect to appellate review of grounds (D) and (E)

7

and holding that an appellate court must provide a detailed analysis if affirming termination on either ground). Thus, if we conclude that the evidence is legally and factually sufficient to uphold the trial court's finding as to subsection (E), we need not address the arguments raised by Appellant concerning subsection (O). *See* FAM. § 161.001(b)(1); TEX. R. APP. P. 47.1.

Subsection (E) requires clear and convincing proof that the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." FAM. § 161.001(b)(1)(E); *In re S.M.R.*, 434 S.W.3d 576, 585 (Tex. 2014). It has been said that the term "endanger" means to expose a child to loss or injury or to jeopardize the child. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *S.B. v. Tex. Dep't of Fam. & Protective Servs.*, 654 S.W.3d 246, 253 (Tex. App.—Austin 2022, pet. denied). The term also encompasses a substantial risk of harm to the child, *J.O.A.*, 283 S.W.3d at 345, and "means more than a threat of metaphysical injury or potential ill effects of a less-than-ideal family environment." *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012).

Endangerment under subsection (E) focuses on the parent's conduct, and whether the endangerment of the child's well-being was the direct result of the parent's acts, omissions, or failures to act. *In re M.G.*, 585 S.W.3d 51, 57 (Tex. App.—Eastland 2019, no pet.). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *Id.*; *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied). The offending conduct need not be directed at the child, nor must the child actually suffer harm or injury. *J.O.A.*, 283 S.W.3d at 345; *Boyd*, 727 S.W.2d at 533. The endangering conduct may include the parent's actions before the child's birth and may relate to the parent's actions

while the parent had possession of other children. *In re S.T.*, No. 11-19-00363-CV, 2020 WL 2610393, at *4 (Tex. App.—Eastland May 18, 2020, pet. denied) (mem. op.).

Evidence of endangerment is demonstrated in many forms, including the existence or presence of (1) sexually transmitted diseases, (2) sexual abuse, (3) criminal convictions, (4) alcohol and drug abuse, (5) neglect, and (6) domestic abuse. *S.M.R.*, 434 S.W.3d at 585; *see also In re I.R.H.*, No. 11-17-00070-CV, 2017 WL 3994682, at *2 (Tex. App.—Eastland Sept. 8, 2017, no pet.) (mem. op.) (evidence of sexual abuse of one child is sufficient to support a finding of endangerment with respect to other children) (citing *In re R.W.*, 129 S.W.3d 732, 742 (Tex. App.—Fort Worth 2004, pet. denied)). Drug use and its effects on the parent's life and ability to parent may also establish an endangering course of conduct. *J.O.A.*, 283 S.W.3d at 345; *In re A.A.M.*, 464 S.W.3d 421, 426 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("Illegal drug use creates the possibility that the parent will be impaired or imprisoned and thus incapable of parenting.").

"A finding of endangerment is supported 'if the evidence . . . shows a course of conduct which has the effect of endangering the physical or emotional well-being of the child.'" *In re C.E.*, No. 23-0180, 2024 WL 875455, at *4 (Tex. March 1, 2024). Further, endangerment may be inferred based on a parent's "course of conduct" that presents a substantial risk to the child's physical or emotional well-being. *In re R.R.A.*, No. 22-0978, 2024 WL 1221674, at *6 (Tex. March 22, 2024). Thus, drug use and its effects on the parent's life and ability to parent and care for a child may establish an endangering course of conduct under Subsection (E). *See, e.g.*, *R.R.A.*, 2024 WL 1221674, at *6–8; *J.O.A.*, 283 S.W.3d at 345; *A.A.M.*, 464 S.W.3d at 426; *see also In re K.B.*, No. 01-23-00658-CV, 2024 WL 791630, at *6 (Tex. App.—Houston [1st Dist.] Feb. 27, 2024, no pet. h.) (mem. op.).

Here, there is legally and factually sufficient evidence to support the trial court's finding that Appellant engaged in a continuing course of drug abuse, for nearly a decade, that directly endangered the physical or emotional well-being of her children. A.B. and J.S. tested positive for cocaine in 2015, and all four children tested positive for cocaine in 2018. In May of 2022, J.S.'s and A.B.'s drug tests were negative, but six-year-old C.O. tested positive for amphetamine and methamphetamine, and seven-year-old H.O. tested positive for cocaine.

Appellant admitted to repeatedly using cocaine and marihuana in the years prior to and after the removal of her children and she conceded that her children were previously removed "[f]or marijuana use." The results of numerous drug tests confirmed her continued use of marihuana, methamphetamine, and cocaine. "[A] parent's decision to engage in illegal drug use during the pendency of a termination suit, when the parent is at risk of losing a child, may support a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being." *See In re A.M.*, 495 S.W.3d 573, 580 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). Such is the case here.

Even then, Appellant steadfastly refused to acknowledge that she had a drug problem, testifying that she "was distributing," rather than using, the methamphetamine with which she was arrested in 2022. But any "[d]rug activity 'significantly harms the parenting relationship' and can constitute endangerment even if it occurs outside of the child's presence." *K.B.*, 2024 WL 791630, at *6 (quoting *A.M.*, 495 S.W.3d at 579). Illegal drug use exposes the children to the possibility that the parent may be impaired or imprisoned, as it did in this case. *See In re S.C.F.*, 522 S.W.3d 693, 700 (Tex. App.—Houston [1st Dist.] 2017, pet. denied); *A.M.*, 495 S.W.3d at 579.

Additionally, A.B. and J.S. were exposed to domestic violence in their early childhood years. K.O., the biological father of H.O. and C.O., pled no contest to assaulting Appellant in 2012. K.O. was released from prison in October of 2022, and he and Appellant used cocaine together the following December or January, according to Appellant. *See In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("A parent's abusive or violent conduct can produce a home environment that endangers a child's well-being.").

Based on the evidence presented, the trial court could have reasonably found by clear and convincing evidence that Appellant engaged in a course of conduct that endangered the children. *See R.R.A.*, 2024 WL 1221674, at *6–8; *J.O.A.*, 283 S.W.3d at 345. Therefore, we hold that the evidence is legally and factually sufficient to support the trial court's finding under subsection (E). Accordingly, we overrule Appellant's first issue.

Because only one statutory ground is necessary to support a finding of termination, and because we have upheld the trial court's termination finding under subsection (E), we need not address Appellant's second issue regarding the trial court's termination finding under subsection (O). *See* Tex. R. App. P. 47.1; Fam. § 161.001(b)(1); *N.G.*, 577 S.W.3d 230, 232–35; *In re A.V.*, 113 S.W.3d 355, 363 (Tex. 2003); *see also In re M.M.*, No. 11-22-00359-CV, 2023 WL 4003260, at *5 (Tex. App.—Eastland June 15, 2023, pet. denied) (mem. op.).

B. *The Best Interest of the Children Determination*

In Appellant's third issue, she challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in the best interest of the children. Specifically, Appellant contends that the evidence supporting the trial court's best-interest finding is lacking because: (1) A.B. and J.S. expressed their desire to remain with Appellant; (2) there are no plans for

permanent placements or adoptive homes for the children, and A.B. informed the trial court that he did not want to be adopted; (3) there is a lack of evidence of several *Holley* factors since no one is currently seeking custody of the children; and (4) Appellant "was not court[-]ordered to test negative," so her positive drug tests should not be used against her. Appellant likewise complains of the trial court's failure to find on the record that termination was in the children's best interest.

First, we reiterate that evidence of each *Holley* factor is not required to support a best interest finding. *In re S.R.*, 452 S.W.3d 351, 366 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *In re S.O.*, No. 05-22-01019-CV, 2023 WL 2237084, at *13 (Tex. App.—Dallas Feb. 27, 2023, no pet.) (mem. op.). Put differently, the absence of evidence on some of these factors does not preclude a best interest finding, "particularly if [the] undisputed evidence shows the parental relationship endangered the child's safety." *In re N.T.*, 474 S.W.3d 465, 477 (Tex. App.—Dallas 2015, no pet.). Indeed, "evidence relating to one single factor may be adequate in a particular situation to support a finding that termination is in the best interests of the child." *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.). "'[B]est interest' is a term of art encompassing a much broader, facts-and-circumstances based evaluation that is accorded significant discretion." *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013).

The trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *J.F.-G.*, 627 S.W.3d at 312. We are not at liberty to disturb the determinations of the trier of fact so long as those determinations are not unreasonable. *Id.* at 311–12; *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). Giving due deference to the trial court, as we must, we hold that, based on the evidence and the application of the *Holley* factors, the trial court could have reasonably formed a

firm belief or conviction that termination of Appellant's parental rights was in the best interest of the children. *See Holley*, 544 S.W.2d at 371–72.

As we have said, in its best interest determination, a trial court, as the factfinder, may infer that a parent's past endangering conduct may recur if the child is returned to the parent. *See In re L.N.C.*, 573 S.W.3d 309, 318 (Tex. App.—Houston [14th Dist.] 2019, pet. denied); *J.D.*, 436 S.W.3d at 118; *see also In re T.B.*, No. 09-20-00172-CV, 2020 WL 6787523, at *8 (Tex. App.—Beaumont Nov. 19, 2020, no pet.) (mem. op.) ("factfinder may consider prior CPS history of neglect, drug abuse, or lack of care for the children"). Evidence that is relevant to Section 161.001(b)(1) termination grounds may also be relevant to the determination of the child's best interest. *In re C.V.L.*, 591 S.W.3d 734, 753 (Tex. App.—Dallas 2019, pet. denied). And evidence that supports termination under the grounds listed in Section 161.001(b)(1) can be considered in the best-interest analysis. *See C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266. Thus, the trial court could properly consider Appellant's drug abuse, arrests for criminal conduct, and other evidence of endangerment in determining whether the termination of her parental rights was in the children's best interest. *See id.*

While Appellant was caring for the children in the months preceding their removal, the children did not attend school for at least sixty days. A.B.'s behavioral issues led to his suspension from elementary school. Soon after removal, A.B. was aggressive toward his sisters, and "they couldn't get along." Robert Smith, the 2INgage permanency case manager, testified that being in foster care has "affected [the children] greatly[,] especially [J.S.]." In fact, J.S. became depressed after the children's third removal and placement into foster care. C.O. and H.O. also had difficulty readjusting to foster care for a third time. Smith testified that, after a year of therapy since their removal, the children's behavioral patterns have improved, and

13

remaining in foster care will ensure that they continue to engage in therapy to address their emotional trauma and needs.

Appellant testified that she believes she can stay sober for "[f]orever," and attested that she is "doing everything for [her] kids." Her assurances aside, it is undisputed that Appellant frequently smoked marihuana while this case was pending in the trial court below, claiming that it was necessary "[b]ecause [she] was stressed." Appellant has thus neither achieved, maintained, nor made a significant effort to attain sobriety. Instead, her persistent and unapologetic drug use while under both Department supervision and community supervision for a felony drug offense shows her clear disinterest in placing the welfare of her children before her own. *See, e.g.*, *S.O.*, 2023 WL 2237084, at *12–13 ("Mother's drug use was not isolated but had been an ongoing problem in her life."); *see also N.T.*, 474 S.W.3d at 479 ("[R]ecent improvement alone is not sufficient to avoid termination of parental rights.").

J.S. and A.B. expressed their desire to return to Appellant's care, and A.B. advised the trial court that he did not want to be adopted. While we do not ignore a child's desires, it is only one factor that we consider in the overall best interest analysis. *See Holley*, 544 S.W.2d at 372; *cf. In re F.M.E.A.F.*, 572 S.W.3d 716, 732 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) ("A child's love for a parent cannot be ignored as a reflection of the parent's ability to provide for the child's emotional needs."). Although a child's desires or wishes for residing with a parent is an important consideration in determining the best interest of the child, "it cannot override or outweigh evidence of danger to the child." *F.M.E.A.F.*, 572 S.W.3d at 732. Moreover, a child's expressed preference is not binding on the trial court; rather, it is only one factor, among others, that the trial court considers in its best interest determination. FAM. § 153.009(c) (West 2014); *see Hart v. Kozik*, 242

S.W.3d 102, 109 (Tex. App.—Eastland 2007, no pet.) (citing *In re Marriage of Stockett*, 570 S.W.2d 151, 153 (Tex. App.—Amarillo 1978, no writ)). Here, the trial court explained to A.B. and J.S. that it had to "make the very best decision" for them, even though it "may not be what [they] want." Given Appellant's conduct that has directly endangered her four children, and the children's needs and desires for a safe and stable home environment, this factor does not weigh against a finding of termination. *See Hart*, 242 S.W.3d at 109.

Furthermore, although "[e]vidence about placement plans and adoption are, of course, relevant to best interest," a "lack of evidence about definitive plans for permanent placement and adoption cannot be the dispositive factor." *C.H.*, 89 S.W.3d at 28. Otherwise, terminations would regularly be subject to reversal on the sole ground that "an adoptive family has yet to be located." *Id.*; *see also F.M.E.A.F.*, 572 S.W.3d at 732. Smith testified that the children's current caregivers in their respective placements are committed to providing them with an environment and structure where they can succeed. Appellant, on the other hand, has not provided her children with a safe, drug-free home environment. Therefore, we conclude that the trial court properly found that this factor does not weigh against a best-interest finding and termination of Appellant's parental rights. *See C.H.*, 89 S.W.2d at 28; *F.M.E.A.F.*, 572 S.W.3d at 732.

Appellant proffered several excuses for her positive drug tests and attributed her children's drug exposure to her sister's methamphetamine use. Appellant consistently maintained that she has not been in the presence of methamphetamine since May or June of 2022, despite the many positive test results to the contrary. Rather than showing a modicum of remorse, Appellant has exhibited nothing but apathy and nonchalance about her methamphetamine distribution and ongoing drug abuse. For example, according to Appellant, because she was only allegedly selling

methamphetamine, rather than using it, this conduct somehow weighs against a finding of terminating her parental rights. Like the trial court, we reject this logic. Certainly, any drug activity may render the parent incapable of parenting. *See R.R.A.*, 2024 WL 1221674, at *6–8; *A.M.*, 495 S.W.3d at 579; *A.A.M.*, 464 S.W.3d at 426.

Concomitant with Appellant's apathy and denial of drug abuse, she insisted that her parental capabilities remained unaffected. She testified: "[E]ven if I was smoking weed, I was still taking care of them. I was still making sure they had meals . . . clean clothes . . . [and] ate three times a day." Appellant's ability to survive each day while under the influence of drugs is not an issue before us, and her blasé attitude towards sobriety supports the trial court's findings. By its best-interest determination, the trial court properly found that it is in the best interest of Appellant's children to have sober and drug-free caregivers who can prevent them from ingesting illegal substances, take them to school, teach them non-aggressive behaviors, and meet their physical and emotional needs beyond simply ensuring "that [they] had lights, water, and gas" at home. Appellant's conduct has caused and resulted in her absence from her children's lives, three removals, the children to endure several foster care placements, as well as the children's disappointment, embarrassment, loneliness, and lack of belonging.

The State honored the constitutional-protected relationship of Appellant with her children until it became clearly and convincingly apparent that Appellant's primary interest was not the protection of her children. *See A.V.*, 113 S.W.3d at 361. Years of resources were exhausted in an effort to keep Appellant's children in her care, but she has pushed reunification efforts to their outermost limits and has shown that she is not "fit to accept the accompanying responsibilities" of parenthood. *See id.* Indeed, Appellant attempted to comply with the required court-ordered

16

services, and she temporarily achieved sobriety during her prior Department investigations; however, each time she reverted to drug use and criminal activity once the State's involvement concluded. But this time, she brazenly used drugs in the face of possible termination of her parental rights during the pendency of this case.

Appellant has been given countless opportunities to properly care for her children throughout the years, and the trial court determined, based on clear and convincing evidence, that this chance was her last. Appellant's substance abuse, criminal history, negative history with the Department, and refusal to address the issues that caused the Department's years of involvement support the trial court's firm belief or conviction that the termination of Appellant's parental rights was in the children's best interest. *See Holley*, 544 S.W.2d at 372; *see also Yonko v. Dep't of Family & Protective Servs.*, 196 S.W.3d 236, 245 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

With respect to the trial court's lack of an oral pronouncement of its best interest determination, we reject Appellant's argument that the trial court is required to make its best-interest finding on the record. Here, the trial court issued its written order and expressly recited and found that the termination of Appellant's parental rights to her four children was in the children's best interest.

The Family Code permits a trial court to make pronouncements orally, in the form of "renditions." FAM. § 101.026. But when, as in this case, there is an inconsistency between the trial court's written judgment and its oral pronouncement, the written judgment controls. *In re C.J.B.*, 681 S.W.3d 778, 787 (Tex. App.—Houston [14th Dist.] 2023, pet. denied); *In re D.A.Z.*, 583 S.W.3d 676, 684 (Tex. App.—El Paso 2018, no pet.); *In re K.M.B.*, 148 S.W.3d 618, 622 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *see also In re A.C.*, No. 04-12-00679-CV, 2013

17

WL 352449, at *2 (Tex. App.—San Antonio Jan. 30, 2013, pet. denied) (mem. op.) (affirming the trial court's judgment terminating parental rights, even though the trial court's oral pronouncement did not include best-interest findings, because the trial court's written judgment included these findings).

Appellant has not cited to, and our research has not revealed, any authority to support her argument. Moreover, and as we have said, to the extent there is any inconsistency between the trial court's oral pronouncement and its final judgment in this case, its final judgment controls. *See In re L.G.R.*, 498 S.W.3d 195, 206 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (rejecting the parent's argument that the trial court's oral rendition made without a best-interest finding resulted in error even though the finding was made and expressed in the final judgment). Accordingly, we overrule Appellant's third issue.

C. *Children's Presence in the Courtroom During the Final Hearing*

In her fourth issue, Appellant asserts that the trial court abused its discretion when it allowed J.S. and A.B. to attend and observe the final hearing and "witness[] evidence and testimony . . . of their parents' failure to secure their return," thereby "further traumatiz[ing]" them.

A trial court abuses its discretion if it acts without reference to any guiding rules or principles—that is, if its ruling is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). We may not substitute our judgment for that of the trial court merely because we would have ruled differently under the circumstances. *In re M-I L.L.C.*, 505 S.W.3d 569, 574 (Tex. 2016); *Low*, 221 S.W.3d at 619–20. When reviewing a trial court's ruling for an abuse of discretion, we uphold the ruling on any theory of law applicable to the case that finds support in the record, and we imply any findings of fact necessary to support its ruling. *See Rinkle v. Graf*, 658 S.W.3d 821, 824 (Tex. App.—Houston [14th Dist.] 2022,

no pet.). "A trial court cannot abuse its discretion if it reaches the right result, even for the wrong reasons." *Hawthorne v. Guenther*, 917 S.W.2d 924, 931 (Tex. App.—Beaumont 1996, writ denied) ("we are not bound by an incorrect statement of the law as it applies to a case"); *see also In re J.M.*, No. 07-15-00438-CV, 2016 WL 6024279, at *2 (Tex. App.—Amarillo Oct. 13, 2016, no pet.) (mem. op.).

Nothing in the record indicates that these children were present for the first day of trial. On the second day of the final hearing, the trial court noticed that J.S. and A.B. were present. No objection was made by either party about their presence, and the Department proceeded with presenting its case.

Prior to Smith's testimony that concerned Appellant giving J.S. a tablet during a visitation session that contained sexually explicit content, Appellant's trial counsel asked that the children exit the courtroom. The following exchange occurred during a bench conference:

> THE COURT: Well, if one of the children saw it, then the children -- you want the children in here, so we're going to hear the good, the bad, and the ugly.
>
> . . .
>
> [TRIAL COUNSEL]: Just renew my objection is that they're in the courtroom at all. Therapeutically, I think this is devastating.
>
> THE COURT: I understand but the kids -- the law is what the law is. I hate it, too.
>
> [TRIAL COUNSEL]: Until it's changed by another law.
>
> THE COURT: That's right. All right.

We have found no other objections in the record concerning whether J.S. or A.B. were present in the courtroom during the final hearing, and Appellant does not direct our attention to any. Instead, Appellant posits that "the legislature has provided measures for children to be heard outside of the courtroom setting."

The legislature has also explicitly required the presence of the children at the final hearing "unless the [trial] court specifically excuses the child[ren]'s attendance." *See* FAM. § 263.302. Because Appellant failed to object when the trial court acknowledged J.S.'s and A.B.'s presence, she has not preserved her complaint for our review. *See* TEX. R. APP. P. 33.1 ("As a prerequisite to presenting a complaint for appellate review, the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion.").

Even if Appellant's subsequent objection had preserved this issue for our review, we conclude that the trial court did not abuse its discretion when it allowed J.S. and A.B. to attend and observe the trial proceedings. As the trial court noted, "the law is what the law is," presumably referring to Section 263.302.[4] Here, the trial court was simply following the established law as it is bound to do. *See* FAM. § 263.302. Because the trial court did not abuse its discretion, we overrule Appellant's fourth issue.

IV. *This Court's Ruling*

We affirm the order of the trial court.

W. STACY TROTTER
JUSTICE

March 28, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

---

[4]"The child shall attend each permanency hearing unless the [trial] court specifically excuses the child's attendance." FAM. § 263.302.